# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MRIKA KRASNIQI and ANIL ZOGJANI,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>SUSAN DIBBINS, in her official capacity as Chief, Administrative Appeals Office, U.S. Citizenship and Immigration Service; TRACY L. RENAUD, in her official capacity as Acting Director, U.S. Citizenship and Immigration Services; ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security; and LOREN MILLER, in her official capacity as Director, Nebraska Service Center, U.S. Citizenship and Immigration Services,<br><br>　　　　Defendants. | Civ. No. 20-06188 (KM)<br><br>OPINION |

### KEVIN MCNULTY, U.S.D.J.:

Federal immigration law allocates visas for non-citizens with "extraordinary ability" in the arts. Mrika Krasniqi, a Kosovar filmmaker, petitioned for such a visa, as well as for permanent resident status for herself and her son, Anil Zogjani. The U.S. Citizenship and Immigration Service (the "Service") denied her petition. So Ms. Krasniqi and Zogjani sued the government officials responsible (collectively, "the Government"),[1] alleging

---

[1] Pursuant to Fed. R. Civ. P. 25(d), when a public official is a party to an action and subsequently leaves office, that official's successor may be substituted as a party. Accordingly, Susan Dibbins should be substituted for Barbara Velarde as the Chief of the Administrative Appeals Office; Tracy L. Renaud should be substituted for Kenneth T. Cuccinelli II as the Acting Director of the Service; Alejandro Mayorkas should be substituted for Chad Wolf as the Secretary of Homeland Security; and Loren Miller should be substituted for Gregory A. Richardson as the Director of the Nebraska

violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and procedural due process. The parties cross-moved for summary judgment. (DE 21, 22.)[2] For the following reasons, Plaintiffs' motion (DE 21) is **DENIED**, and the Government's motion (DE 22) is **GRANTED**.

## I.   BACKGROUND

### A. Statutory and Regulatory Background

Immigration visas are available for aliens "with extraordinary ability." 8 U.S.C. § 1153(b)(1)(A). To qualify, (1) the alien must have "extraordinary ability in the arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation"; (2) the alien must "seek[] to enter the United States to continue work in the area of extraordinary ability"; and (3) the alien's "entry into the United States will substantially benefit prospectively the United States." *Id.* § 1153(b)(1)(A)(i)–(iii). Implementing regulations further explain that "[e]xtraordinary ability means a level of

---

Service Center. The accompanying order will direct the clerk of the court to amend the docket and caption accordingly.

[2]      Certain citations to the record are abbreviated as follows:

DE = docket entry

Compl. = Complaint (DE 1)

Pl. Br. = Plaintiffs' Brief in Support of their Motion for Summary Judgment (DE 21-1)

Pl. Opp. = Plaintiffs' Brief in Opposition to the Government's Motion for Summary Judgment (DE 33) (Plaintiffs filed their opposition brief late but move for the Court to accept the untimely filing. (DE 34.) The Government took no position on this request. (*Id.*) The Court will grant the motion to file the opposition brief out of time.)

Gov't Br. = The Government's Brief in Support of its Motion for Summary Judgment (DE 22)

K.A.R. = Krasniqi Administrative Record (pin citations refer to the consecutive Bates numbers at the bottom of each page) (DE 17)

Z.A.R. = Zogjani Administrative Record Krasniqi Administrative Record (pin citations refer to the consecutive Bates numbers at the bottom of each page) (DE 18)

expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2).

An alien may petition the Service for an extraordinary ability visa and must include supporting evidence. *Id.* § 204.5(h)(3). In considering petitions, the Service uses a two-step inquiry. U.S. Citizenship & Immigration Services Policy Manual, Vol. 6, Pt. F, Ch. 2, https://www.uscis.gov/policy-manual/volume-6-part-f-chapter-2 (hereinafter "Policy Manual"). The petitioner bears the burden of proof and must establish eligibility by a preponderance of the evidence. 8 C.F.R. § 103.2(b)(1); *Matter of Chawathe*, 25 I. & N. Dec. 369, 375 (AAO 2010); *see also Soni v. United States*, Civ. No. 11-2431, 2016 WL 4154137, at *3 (D.N.J. Aug. 2, 2016).

At the first step, the petitioner can make either of two showings: For one, she[3] may present "evidence of a one-time achievement (that is, a major, international recognized award)." 8 C.F.R. § 204.5(h)(3). Alternatively, instead of a major award, the Service lists ten other types of evidence in subsection (h)(3), and the petitioner can satisfy step one if she can present at least three of these. 8 C.F.R. § 204.5(h)(3). The subsection (h)(3) criteria include, for example, "lesser nationally or internationally recognized prizes," and "[p]ublished material about the alien in professional or major trade publications." *Id.* § 204.5(h)(3)(i), (iii).

If the petitioner makes a minimum showing at step one, then at step two, the Service makes a "final merits determination" in which it considers "the quality of the evidence" and "evaluate[s] the evidence together." Policy Manual, *supra.* In other words, step one simply asks whether the petitioner has produced the minimum evidence satisfying the (h)(3) criteria, but step two involves the merits inquiry of whether all the evidence shows "extraordinary ability." *Id.*; *Rijal v. U.S. Citizenship & Immigr. Servs.*, 772 F. Supp. 2d 1339, 1346 (W.D. Wash. 2011), *aff'd*, 683 F.3d 1030 (9th Cir. 2012) (Mem).

---

[3]     Because the petitioner here is female, for convenience I use female pronouns to refer to a generic petitioner.

If granted an extraordinary ability visa, the alien may also have her status adjusted to a lawful permanent resident. 8 U.S.C. § 1255(a); 8 C.F.R. § 245.1(a). Likewise, her child may qualify for adjustment of status. 8 U.S.C. § 1153(d).

## B. Proceedings

### 1. Submissions

Ms. Krasniqi and Zogjani are natives and citizens of Kosovo who were admitted to the U.S. as temporary visitors. (K.A.R. at 640, 642; Z.A.R. at 47, 49.) Ms. Krasniqi petitioned for an extraordinary ability visa due to her work as a director, producer, and screenwriter for documentary films. (K.A.R. at 3, 68, 90.) With that petition, she also applied to adjust her and Zogjani's status to that of lawful permanent residents. (*Id.* at 627–57; Z.A.R. at 34–63.)

In support of her petition, she stated that she won a "Certificate of Honor" from the *Marché du Film* ("Market of Film" in French) associated with the Cannes Film Festival. (K.A.R. at 70.) Held annually on the Côte d'Azur, the festival previews films from around the world and awards prizes, the most prestigious being the *Palme d'Or* ("Golden Palm") for best picture. (*Id.* at 119, 124.) An American might say that Cannes is the French version of the Oscars, although the French question the validity of the comparison. *See* Festival de Cannes, *The Festival in 2021, Interview with Thierry Frémaux*, https://www.festival-cannes.com/en/qui-sommes-nous/festival-de-cannes-1 (last visited Aug. 31, 2021) (describing the Festival as "certainly the most important film festival in terms of worldwide impact").

In conjunction with the Festival there occurs the *Marché du Film*, a meeting of film-industry professionals. (K.A.R. at 129.) The *Marché* includes a "Producers Network" which "hosts more than 500 producers from around the world for a series of meetings and unique events specifically designed to stimulate international co-production and optimize networking." (*Id.*) Producers may show their films, and "special gratitude awards are given such as [the]

Certificate of Honor" for projects that garner "interest by a great number of producers and distributors." (*Id.*)

Ms. Krasniqi showed a film which she produced and directed, *Soldier*, and received a Certificate of Honor. (*Id.* at 117, 130.) As evidence of that award, she submitted, among other things, (a) a copy of the Certificate (*id.* at 117); (b) a photo of her in front of a step-and-repeat display[4] with the *Marché* logo (*id.* at 118); (c) a Wikipedia entry for the Cannes Film Festival (*id.* at 119–28); (e) part of the *Marché*'s webpage (*id.* at 129); and (f) an article from Bota Press reporting that her film would screen at the *Marché* (*id.* at 130).

Besides this award, Ms. Krasniqi provided other evidence to support her petition:

- evidence of awards from other film festivals and organizations: (a) Prize of the Organizer at the One World Human Rights Documentary Film Festival, (b) Best International Social Documentary at the New York International Independent Film Festival, (c) Best Human Artist given by the European Jewish Communities in Paris, and (d) a certificate of appreciation from the Sarajevo Film Festival (*id.* at 70);

- articles from foreign newspapers and online publications about her work and awards (*id.* at 6);

- evidence that she founded Albanian Film Week, a film festival held in New York City showing films from Albanian filmmakers (*id.* at 8);

- evidence of her membership in two organizations for Kosovar filmmakers (*id.* at 77); and

- a "Woman of the Year" Award from the United States Senate for her work promoting Albanian culture in the United States (*id.* at 1193–1200).

### 2. Decision, Appeal, and this Case

The Service denied Ms. Krasniqi's petition. (K.A.R. at 68–73.) She appealed to the Service's Administrative Appeals Office ("AAO"), an

---

[4]     Sometimes known as a "press wall," a step-and-repeat display has a repeating pattern of images, such as logos.

administrative appellate body that hears appeals from petition denials. (*Id.* at 2.) Upon *de novo* review, the AAO dismissed the appeal in a written opinion, finding that she had not satisfied any criteria. (*Id.* at 2–10.)[5] Because Ms. Krasniqi could not obtain a visa, her application and the derivative application for Zogjani for adjustment of status were denied. (Z.A.R. at 24.)

They sued the Government in this Court, alleging that (1) the denial of the petition for an extraordinary ability visa and the accompanying denials of adjustment of status violated the APA; (2) the denials violated their right to procedural due process under the Fifth Amendment; and (3) they are entitled to mandamus relief compelling the Service to grant their petitions. (Compl. ¶¶ 33–43.) The parties cross-moved for summary judgment. (DE 21, 22.)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The entire case on review is a question of law." *Neto v. Thompson*, 506 F. Supp. 3d 239, 243–44 (D.N.J. 2020) (quoting *Am. Biosci., Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). In such a case, "the district court does not need to determine whether there are disputed facts to resolve at trial since the administrative agency is the finder of fact. Instead, my task is to review the administrative record and determine whether, as a matter of law, the Service's action complied with the APA." *Id.* at 244 (quotation marks and citation omitted).

## III.    DISCUSSION

The APA empowers courts to review agency actions and set them aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Plaintiffs claim that the Service and

---

[5]     For easier reading, I discuss the AAO's specific findings on each criterion in the context of Ms. Krasniqi's challenges.

AAO violated the APA by the manner in which they viewed the evidence and found the facts to deny Ms. Krasniqi's petition. (Pl. Br. at 24.) They thus present an arbitrary-and-capricious challenge. *See, e.g.*, *Visinscaia v. Beers*, 4 F. Supp. 3d 126, 133 (D.D.C. 2013) (analyzing similar arguments under an arbitrary-and-capricious standard); *Rijal*, 772 F. Supp. 2d at 1345 (same).

Arbitrary-and-capricious review requires me to assess whether the decision was "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). My review "is deferential, and a court may not substitute its own policy judgment for that of the agency." *Id.* (citations omitted). This "review also encompasses review of whether an agency's factual judgments are supported by substantial evidence." *Sequretek, Inc. v. Cuccinelli*, Civ. No. 20-05462, 2021 WL 1660871, at *4 (D.N.J. Apr. 28, 2021) (cleaned up). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Taransky v. Sec'y of U.S. Dep't of Health & Human Servs.*, 760 F.3d 307, 313 (3d Cir. 2014) (quotation marks and citation omitted). At bottom, in matters like this one, the question is not whether the agency reached the best conclusion, but only whether the conclusion it did reach had support. *Visinscaia*, 4 F. Supp. 3d at 133; *see Yeboah v. U.S. Dep't of Justice*, 345 F.3d 216, 223 (3d Cir. 2003) ("An action will not be deemed arbitrary, capricious, or an abuse of discretion simply because one may happen to think it ill-considered, or to represent the less appealing alternative solution available . . . ." (citation omitted)).

I only review the grounds invoked by the agency when it made its decision. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020). Here, the decision that is the focus of my review is the AAO opinion because it constitutes the "final agency action." *Embassy of the Blessed Kingdom of God for All Nations Church v. Att'y Gen. U.S.*, 591 F. App'x 161, 165 (3d Cir. 2014) (citations omitted); *see also, e.g.*, *Kazarian v. U.S. Citizenship & Immigr. Servs.*, 596 F.3d 1115, 1121 (9th Cir. 2010); *Visinscaia*, 4 F. Supp. 3d at 133.

IV.     **DISCUSSION**

The crux of this case is that the AAO's decision affirming the Service's denial of Ms. Krasniqi's petition for an extraordinary ability visa was arbitrary and capricious. I discuss that issue first in Section III.A and then discuss the remaining claims in Section III.B.

   **A. Petition**

Ms. Krasniqi argues that the AAO erred in concluding that she failed to meet her burden for either showing at step one.[6] I review the major award showing in Section III.A.2 and the (h)(3) criteria showing in Section III.A.3, but first I clarify the proper standard to apply to the AAO's application of the regulations in Section III.A.1.

   **1. AAO Interpretation of Regulations**

The regulations use broad terms not readily susceptible of objective definitions in outlining the visa criteria—for example, "contributions of major significance" and "distinguished reputation." 8 C.F.R. § 204.5(h)(3)(v), (viii). The statute itself uses similar, subjective-seeming terms, like "extraordinary ability." 8 U.S.C. § 1153(b)(1)(A). It appears, then, that Congress and the Service "felt it unnecessary and perhaps inadvisable to define" the criteria with utmost specificity and instead "entrusted that decision to the administrative process." *Rijal*, 772 F. Supp. 2d at 1345; *see also Visinscaia*, 4 F. Supp. 3d at 133. Accordingly, the Government asks that the Court defer to the AAO's interpretation and application of the criteria here. (Gov't Br. at 14, 19, 24.)

The regulations do give the AAO wide scope, but it is not free to apply the criteria however it chooses. At a minimum, its interpretation and application must be found to be based in the text of the regulations. *See Kazarian*, 596 F.3d at 1121 ("[N]either USCIS nor an AAO may unilaterally impose novel substantive or evidentiary requirements beyond those set forth at 8 C.F.R. § 204.5."); *Soltane v. U.S. Dep't of Justice*, 381 F.3d 143, 149 (3d Cir. 2004)

---

[6]     Although this case is also brought by Zogjani, the key decision under review relates to Ms. Krasniqi, so I refer hereon only to her for simplicity.

(Alito, J.) (vacating a visa denial when "the AAO's analytic approach is inconsistent with the text of the regulation").

Indeed, courts have recently been signaled to scale back deference to agencies' interpretation and application of regulations. *United States v. Perez*, 5 F.4th 390, 394–94 (3d Cir. 2021) (citing *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019)). Courts previously deferred to "agencies' interpretations of an ambiguous regulation unless those interpretations [were] 'plainly erroneous or inconsistent with the regulation.'" *Soltane*, 381 F.3d at 148 (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945)). Now, however, courts are directed to defer to agencies' interpretations only after determining that (1) the regulation is truly ambiguous, (2) the agency's interpretation is reasonable, and (3) the "character and context" of the agency's interpretation "entitle[] it to controlling weight." *Perez*, 5 F.4th at 395 (citing *Kisor*, 139 S. Ct. at 2414–17). Thus, deference "often doesn't" apply, leaving room for "a strong judicial role in interpreting rules." *Kisor*, 139 S. Ct. at 2418.

I turn first to the third *Perez* consideration, and find that deference is not appropriate here. *Cf. Perez*, 5 F.4th at 396 (considering the third prong out of order). To merit deference, a regulatory interpretation must, among other things, "be the agency's authoritative or official position" and "implicate its substantive expertise." *Kisor*, 139 S. Ct. at 2416–17 (quotation marks and citations omitted). Non-precedential opinions by the AAO do not qualify as authoritative agency positions, because they are the product of informal adjudication and do not bind other parties. *See Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1136–37 (D.C. Cir. 2014) (applying standards similar to those used in *Kisor*); *see also Sequretek*, 2021 WL 1660871, at *4 n.3; *Mutasa v. U.S. Citizenship & Immigr. Servs.*, --- F. Supp. 3d ----, ----, Civ. No. 20-09321, 2021 WL 1207482, at *9 (D.N.J. Mar. 31, 2021); *InspectionXpert Corp. v. Cuccinelli*, No. 19cv65, 2020 WL 1062821, at *25 (Mar. 5, 2020), *report & recommendation adopted by* 2020 WL 3470341 (M.D.N.C.

Mar. 31, 2020). Thus, the Government cannot rely on a resort to deference here.

Where, then, does that leave us? Certainly, the court's affirmance of the AAO's findings on each criterion could not be based on mere deference to the agency's interpretation. Still, the regulatory text is broadly written and does not narrowly constrict agency decision making, so the AAO enjoys some leeway in applying the regulations. Accordingly, I will determine whether the AAO's application is consistent with the regulatory text and does not exceed "the outer bounds of permissible interpretation" "as informed by the text, structure, history, and so forth." *United States v. Nasir*, 982 F.3d 144, 158 (3d Cir. 2020) (en banc) (cleaned up); *see Soltane*, 381 F.3d at 149. If the AAO's interpretation is not "so implausible that it could not be ascribed to a difference in view," I will affirm it. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### 2. Major Award

Ms. Krasniqi argues that the AAO erred in concluding that her Certificate of Honor from the *Marché du Film* did not qualify as a major award.

There is nothing in the statute or regulations defining a "major" award. *Visinscaia*, 4 F. Supp. 3d at 133. The House Judiciary Committee, in amending and reporting favorably on the bill, listed the Nobel Prize as one example. H.R. Rep. 101-723, at 59 (Sept. 19, 1990), *reprinted in* 1990 U.S.C.C.A.N. 6710, 6739; *see also Visinscaia*, 4 F. Supp. 3d at 133. The AAO noted this citation and stated that the Nobel Prize "is reported in the top media internationally regardless of the nationality of the awardees, reflects a familiar name to the public at large, and includes a large cash prize." (K.A.R. at 3–4.) While these "elements" are not necessary, the AAO took them as a guide to the characteristics which Congress deemed relevant and sufficient in defining an award as "major." (*Id.* at 4.)

Ms. Krasniqi, the AAO found, had not presented evidence sufficient to explain "the nature of the [] Certificate of Honor." (*Id.*) At most, the record

showed that "the Marché du Film is the business counterpart to the Cannes Film Festival and is one of the largest film markets in the world." (*Id.*) Still, the film festival and its awards "appear completely distinct from the Marché du Film." (*Id.*) Accordingly, the AAO concluded that "[w]ithout corroborating evidence verifying the certificate's status and international recognition," Ms. Krasniqi had not shown that "her Certificate of Honor qualifies as a one-time achievement." (*Id.*)

The AAO's conclusion was reasonable, and it has good support in the record.[7] *See Prometheus*, 141 S. Ct. at 1160 (upholding agency decision that considered the record evidence and drew a reasonable conclusion from it). The evidence speaking to the nature of the Certificate amounted to the *Marché*'s webpage and a foreign article tersely noting that Ms. Krasniqi received the Certificate. (K.A.R. at 129–30.)[8] But, as the AAO explained, what can be

---

[7]     Ms. Krasniqi does not take issue with the AAO's interpretation of "major, international award" that relied on comparisons to a Nobel Prize. (K.A.R. at 4.) Still, I agree with the courts that have found a risk of error when the AAO requires that a petitioner's award share specific characteristics with a Nobel Prize. *Braga v. Poulos*, No. CV 06-5105, 2007 WL 9229758, at *4 (C.D. Cal. July 6, 2007), *aff'd*, 317 F. App'x 680 (9th Cir. 2009). The Nobel Prize example is contained in the legislative history, not in the statute itself. *Braga*, 2007 WL 9229758, at *3; *see Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("An agency action may be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider . . . ." (quotation marks and citation omitted)).

Relatedly, not all "major, international awards" resemble the Nobel Prize in their scope or notoriety. For example, the highest prize in mathematics is the Fields Medal, which "is not a name known in most households." *Braga*, 2007 WL 9229758, at *3. If the AAO were to require that an award, to be major, must "reflect[] a familiar name to the public at large," like the Nobel Prize (K.A.R. at 3–4), "then no alien mathematician could qualify for an extraordinary achievement visa," *Braga*, 2007 WL 9229758, at *3.

Here, while the AAO did cite the Nobel Prize as a comparator, its ultimate conclusion was based on the lack of evidence presented by Ms. Krasniqi. Accordingly, any arguable misinterpretation by the AAO of a "major, international award" does not impugn its bottom-line conclusion. *Braga*, 2007 WL 9229758, at *5.

[8]     Although Ms. Krasniqi submitted other evidence related to the Certificate, such evidence only spoke to whether she received the Certificate, which is not at issue.

gleaned from these is simply that the *Marché* "offers a networking opportunity for film professionals," while its awards "appear completely distinct" from the awards at Cannes, like the *Palme d'Or*. (K.A.R. at 4.) The AAO could reasonably require evidence regarding the specific criteria for the Certificate, and it correctly found that such evidence was largely lacking. *Strategati, LLC v. Sessions*, No. 18-cv-1200, 2019 WL 2330181, at *3 (S.D. Cal. May 31, 2019).

Further, the *Marché*'s webpage describes the award as a "gratitude" award, suggesting that it is not awarded based on merit or artistic value, like awards at Cannes. (K.A.R. at 129.) Ms. Krasniqi argues that the Certificate "by its very nature" is major and international, because of its *association* with the Cannes festival. (Pl. Br. at 26) The AAO, however, could and did rationally conclude that the *Marché* was not the same thing as the Cannes festival itself. And regardless, it rationally found that more evidence of the Certificate's own criteria was needed. *See Braga v. Poulos*, No. CV 06-5105, 2007 WL 9229758, at *4 (C.D. Cal. July 6, 2007) (counsel's assertions about the nature of an event require an "evidentiary foundation"), *aff'd*, 317 F. App'x 680 (9th Cir. 2009).

Nor did Ms. Krasniqi give the AAO evidence of how the Certificate is perceived outside the *Marché* itself. The single foreign article cited did not suffice, because the AAO had no basis to discern, *e.g.*, the reach and circulation of that publication. *See Visinscaia*, 4 F. Supp. 3d at 133 (AAO rationally "discounted the media coverage of the award, which amounted to one mention in a newspaper whose circulation is unknown"); *Rijal*, 772 F. Supp. 2d at 1345 (AAO rationally discounted "news coverage appear[ing] to be of a local or national nature"). Accordingly, the AAO did not act arbitrarily and capriciously when it concluded that Ms. Krasniqi's Certificate from the *Marché du Film* was not a "major, international award."

### 3. Subsection (h)(3) Criteria

Alternatively, Ms. Krasniqi argues that the AAO erred in concluding that she did not make a sufficient showing as to three subsection (h)(3) criteria. I

discuss in turn each criterion which she argues she satisfied.[9] Her burden is high here: Because the regulation requires evidence of *three* criteria, 8 C.F.R. § 204.5(h)(3), she must show, to warrant a remand, that the AAO erred in its findings for three criteria. *Kazarian*, 596 F.3d at 1122; *Visinscaia*, 4 F. Supp. 3d at 136; *see Del. Riverkeeper Network v. Sec'y Pa. Dep't of Env't Prot.* (*Del. Riverkeeper I*), 833 F.3d 360, 377 (3d Cir. 2016) ("[W]e apply a 'harmless error' analysis to any administrative action we review; mistakes that have no bearing on the substantive decision of an agency do not prejudice a party." (footnotes and citations omitted)).

### a. Lesser Awards

As an (h)(3) factor, petitioner may show that she received "lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor." 8 C.F.R. § 204.5(h)(3)(i). The AAO found that, as to the *Marché* Certificate and Ms. Krasniqi's other awards, her evidence did not (1) show that the awards "receive national or international recognition," or (2) provide a basis to "determine whether she received these awards for excellence in her field." (K.A.R. at 5.)[10]

---

[9] The AAO opinion made findings on criteria which neither the Complaint nor Ms. Krasniqi's briefs challenge. Accordingly, I confine my analysis to those findings challenged by Ms. Krasniqi.

[10] Before the Service, Ms. Krasniqi submitted her Woman of the Year Award from the U.S. Senate as "comparable evidence" under 8 C.F.R. § 204.5(h)(4). She expressly argued that this award "does not directly fit into any of the regulatory specific categories." (K.A.R. at 88.) The AAO thus analyzed that award under § 204.5(h)(4), discussed in Section III.A.3.f, *infra*.

Likewise, I will not consider this award under the lesser awards criterion or any other criteria. As explained more fully in Section III.A.3.e, courts reviewing agency actions follow principles of preservation used by appellate courts in reviewing trial courts. *Carr v. Saul*, 141 S. Ct. 1352, 1358 (2021). One such principle is that when a party intentionally abandons a known right, or "clearly chooses a particular path, it will be respected and generally not further reviewed." *United States v. James*, 955 F.3d 336, 344–45 (3d Cir. 2020). Applying that principle here, Ms. Krasniqi presented her Woman of the Year Award as "comparable evidence" under § 204.5(h)(4) and affirmatively disclaimed any reliance on the award for the other criteria. The AAO's analysis followed suit, and it should not be faulted now for not considering the

13

I will affirm the AAO in this regard because its reasoning was supported by the text of the regulation. *See Del. Riverkeeper Network v. U.S. Army Corps of Eng'rs (Del. Riverkeeper II)*, 869 F.3d 148, 161 (3d Cir. 2017) (agency did not act arbitrarily and capriciously when its reasoning was supported by regulations); *Mutasa*, --- F. Supp. 3d at ----, 2021 WL 1207482, at *7–8 (same). The text requires that the petitioner provide evidence of national or international recognition. *Visinscaia*, 4 F. Supp. 3d at 136; *Guida v. Miller*, No. 20-cv-01471, 2021 WL 568850, at *8–9 (N.D. Cal. Feb. 16, 2021); *Hristov v. Roark*, No. 09-CV-2731, 2011 WL 4711885, at *8 (E.D.N.Y. Sept. 30, 2011). On that score, and to meet a preponderance-of-evidence standard, it is reasonable to find that evidence solely from the awarding organization itself may be insufficient if it does not show "how a larger audience viewed [the] awards." *Visinscaia*, 4 F. Supp. 3d at 136.

Likewise, because the regulation specifies that the awards must be "for excellence in the field of endeavor," it is reasonable for the Service to require evidence that the award is merit-based. The AAO's reasoning that "excellence in the field of endeavor" relates to merit-based achievement is implicit in the opinion, which discounts evidence showing mere participation in the field. (K.A.R. at 5.) *See Del. Riverkeeper II*, 869 F.3d at 161 ("Even if the agency's decision is of less than ideal clarity, we will uphold it if the agency's path may reasonably be discerned." (quotation marks and citation omitted)). To be sure, the phrase "excellence in the field of endeavor" does not suggest a single or narrow interpretation. But the AAO's interpretation here is supported by the plain meaning and purpose of the regulation. *See Nasir*, 982 F.3d at 158. "Excellence" or "excellent" connotes quality or merit. *See Excellent*, *Merriam-*

---

evidence under other criteria. This accords with the well-established principle of administrative law that "[s]imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952).

*Webster Dictionary* (online ed.) (def. 1) ("very good of its kind"); *Excellence,*
*Oxford English Dictionary* (online ed.) (def. 1.a) ("The state or fact of excelling;
the possession chiefly of good qualities in an eminent or unusual degree;
surpassing merit, skill, virtue, worth, etc.; dignity, eminence"). And the purpose
of the regulations and statute is to provide visas for those of "extraordinary
*ability.*" 8 U.S.C. § 1153(b)(1)(A) (emphasis added). All support the AAO's
"merit-based" interpretation here.

Moving to the AAO's application of the regulation, I agree with the AAO
that Ms. Krasniqi's evidence was lacking in showing recognition or excellence.

As to the Certificate from the *Marché du Film*, the AAO reasoned that the
evidence showed the Certificate to be a "gratitude award," and failed to
establish that it was awarded for merit in film making. (K.A.R. at 5.)
Nonetheless, Ms. Krasniqi argues that the *Marché*'s association with the
Cannes festival imbues the award with international recognition and suggests
excellence in film. (Pl. Br. at 27.) But, as reflected in the regulation's plain text,
the focus is on the *award,* not the awarding organization. So while the
Certificate may be given in a context with associations with Cannes, the
Certificate is not the *Palme d'Or*, or some equivalent, and does not become so
simply by association with Cannes. The nature of the award must be, and was
not, proven.

As to the Prize of the Organizer at the One World Human Rights
Documentary Film Festival, Ms. Krasniqi's evidence consisted of the certificate
and webpages for the festival itself. (K.A.R. at 156–61.) Neither describes the
criteria for the award or speaks to the award's recognition.

As to the certificate of appreciation from the Sarajevo Film Festival, she
provided (1) the certificate (*id.* at 149–50); and (2) a letter from one panel
member (a) stating that her certificate was awarded for her contributions that
included screening her films and participating in debates (*id.* at 151), and (b) a
list of merits awards, which did not include her certificate (*id.* at 153). The
letter thus could reasonably indicate that the certificate was awarded for

participation or contribution, but not for "excellence" in the field as such. In addition, Ms. Krasniqi failed to present sufficient evidence from sources besides the festival itself that would be probative of national or international recognition.

As to the Best Human Artist given by the European Jewish Communities in Paris, Ms. Krasniqi proffered a letter from the organization describing itself as a non-profit organization aimed at community service. (K.A.R. at 135.) The letter also described the award criteria: "the artist must have treated topics that serve awareness raise and promotion of human value and human rights protection" [*sic*] and "with their art have shown a special humanity and dedication in a special field." (*Id.*) In addition, she provided articles about the receipt of the award from what appear to be Kosovar publications. (*Id.* at 137–45, 237.)

The AAO found that "this award honors the Petitioner for her contributions to the promotion of human rights, it does not on its face constitute an award for excellence in the field of cinematography." (K.A.R. at 5–6.) That is a reasonable finding based on the cited evidence. From the limited evidence provided, the organization appears directed at community service—it is not an arts organization (although it does promote the arts). It was thus rational for the AAO to conclude that the organization is not a relevant adjudicator of excellence in a particular art. Relatedly, the award itself indeed seems more concerned with Ms. Krasniqi's admirable humanitarian efforts, not her artistic accomplishments as such. Viewed in another way, the record only included Kosovar publications briefly mentioning the organization and the award. The AAO could therefore rationally conclude that such limited evidence was insufficient to show that the award had national or international recognition.

Finally, as to Best International Social Documentary at the New York International Independent Film Festival, Ms. Krasniqi submitted (1) a letter from the festival's CEO, describing it as among the "largest true independent film festivals in the world" and attesting to "extensive coverage" in several well-

known publications (K.A.R. at 101–02); (2) the festival's webpage (*id.* at 105–08); and (3) articles in what appear to be publications from Kosovo noting her receipt of the award (*id.* at 109, 111.) As with the Certificate from the *Marché*, Ms. Krasniqi has presented some evidence about the festival—but she has not presented evidence speaking to *the award's* national or international recognition. This issue is a bit closer; another fact finder might have inferred such recognition. But I cannot say that is the only conclusion to be drawn from this limited evidence, or that the AAO's findings were not based on the evidence, so I cannot disturb the AAO's findings. *Visinscaia*, 4 F. Supp. 3d at 133.

In sum, the AAO had a reasonable basis to conclude that Ms. Krasniqi had not met her evidentiary burden to show that those awards qualified under § 204.5(h)(3)(i). Even if one of the awards presented a closer call, Ms. Krasniqi needed to show that more than one award qualified to warrant a remand. *See* 8 C.F.R. § 204.5(h)(3)(i) (requiring evidence of "prizes or awards" in the plural); *Visinscaia*, 4 F. Supp. 3d at 136 (noting that while reading the regulation to require evidence of multiple awards "seems slightly strained, the Court might well believe deference is required"); *Del. Riverkeeper I*, 833 F.3d at 377 (discussing harmless-error review). She has not, so I will affirm the AAO's conclusion on this criterion.

### b. Published Material

A petitioner may provide "[p]ublished material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought." 8 C.F.R. § 204.5(h)(3)(iii). The AAO noted that Ms. Krasniqi had submitted articles from foreign newspapers and online publications. (K.A.R. at 6.) The AAO nevertheless found this evidence insufficient because Ms. Krasniqi failed to present "circulation data" from which to conclude that "any of the publications . . . are forms of major media." (*Id.*) The AAO also concluded that

Ms. Krasniqi did not present evidence establishing that the publications "qualify as professional or major trade publications." (*Id.*)

Courts have interpreted the regulation to allow the petitioner to rely on two different kinds of published material: "[1] professional or major trade publications *or* [2] other major media." *E.g.*, *Zizi v. Cuccinelli*, No. 20-cv-7856, 2021 WL 2826713, at *6 (N.D. Cal. July 7, 2021); *Eguchi v. Kelly*, 16-CV-1286, 2017 WL 2902667, at *4 (N.D. Tex. July 7, 2017); *Braga*, 2007 WL 9229758, at *7. This makes sense because "professional" and "major trade" modify "publications," which is then separated from "other major media" by the disjunctive "or." *See Tris Pharma, Inc. v. Teva Pharms. USA, Inc.*, Civ. No. 20-05212, 2021 WL 3879153, at *3–4 (D.N.J. Aug. 25, 2021) (explaining how adjectives and nouns used as adjectives modify the nouns they precede); *United States v. Shulick*, 994 F.3d 123, 140 (3d Cir. 2021) (the disjunctive "or" suggests that the terms it separates are "separate way[s] of satisfying the statute").

Starting first with "other major media," courts generally agree that the phrase can mean a publication with significant reach and recognition. It follows that the AAO may reasonably require evidence of circulation or the like. *E.g.*, *Noroozi v. Napolitano*, 905 F. Supp. 2d 535, 545 (S.D.N.Y. 2012); *Hristov*, 2011 WL 4711885, at *10; *Braga*, 2007 WL 9229758, at *7. Likewise, as an evidentiary matter, the AAO may require more than the publication's own say-so that it is "major." *Hristov*, 2011 WL 4711885, at *10; *Braga*, 2007 WL 9229758, at *7.

Applying that understanding here, the AAO reasonably concluded that Ms. Krasniqi did not establish that the proffered material originated from "major media." Ms. Krasniqi provided no basis to gauge the circulation of the publications in which she appeared. She argues that internet-accessible outlets by their nature have a worldwide reach (Pl. Br. at 30), an argument that would substantially undermine any reasonable interpretation of "major." The presence of something on the internet, a medium accessible to nearly anyone

with a computer or smart device, does not establish that it is actually read or respected.

Rather, in some cases, the AAO has considered evidence of website traffic to gauge the scope of readership. *Victorov v. Barr*, No. CV 19-6948, 2020 WL 3213788, at *8 (C.D. Cal. Apr. 9, 2020). But Ms. Krasniqi did not present anything like that here. At most, she provided Wikipedia articles about the publications. The AAO chose not to accept a Wikipedia citation as reliable. (K.A.R. at 5 n.4.) It is possible to view the matter differently, but courts have held similarly, so I cannot find that the AAO erred in excluding Wikipedia evidence. *United States v. Lawson*, 677 F.3d 629, 650–51 (4th Cir. 2012); *Bing Shun Li v. Holder*, 400 F. App'x 854, 857 (5th Cir. 2010) (per curiam); *Badasa v. Mukasey*, 540 F.3d 909, 910 (8th Cir. 2008); *Kraus v. Alcatel-Lucent*, 441 F. Supp. 3d 68, 71 n.7 (E.D. Pa. 2020); *Jones v. Synthes USA Sales, LLC*, Civ. No. 08-2060, 2010 WL 3311840, at *9 (D.N.J. Aug. 19, 2010).

When it comes to "professional or major trade publications," as opposed to "major media," I do not find that similar evidence of wide circulation is required. I offer three reasons.

First, when a statute or regulation names one specific category and one general category, separated by the disjunctive, courts usually interpret the two categories separately. In other words, they do not need to share common attributes and do not necessarily act upon one another. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 224–25 (2008) (interpreting "any officer of customs or excise or any other law enforcement officer"); *see also United States v. Buluc*, 930 F.3d 383, 388–90 (5th Cir. 2019) (the structure of "connives or conspires, or takes any other action" "signals contextually that [the three verbs] have independent meaning"). The regulation here follows that structure, with "professional or major trade publications" being the specific category and "other major media" being the more general category. Accordingly, the categories should have "independent meaning," so a requirement for "major

media" should not necessarily be a requirement for "professional or major trade publications." *See Buluc*, 930 F.3d at 390.[11]

Second, further indication of independent meaning comes when one considers the canon against surplusage. Under that canon, courts read statutes and regulations to "give effect to every word." *City of Philadelphia v. Att'y Gen. of U.S.*, 916 F.3d 276, 289 (3d Cir. 2019). If "professional or major trade publications" must share the same attributes as "major media" (namely, high circulation), then including "professional or major trade publications" in the regulation is unnecessary. "Major media" would subsume "professional or major trade publications," which would become superfluous. *Zizi*, 2021 WL 2826713, at *6; *Braga*, 2007 WL 9229758, at *7. To avoid that result, "professional or major trade publications" should be read "in a way that gives it some independent heft." *Philadelphia*, 916 F.3d at 289.

Third, having established that "professional or major trade publications" is separate from "other major media," the question becomes what it requires. Requiring evidence of circulation for "professional or major trade publications" does not square with the "ordinary understanding" of that term or "ordinary practice." *Travers v. Fed. Exp. Corp.*, --- F.4th ---, ---, No. 20-2703, 2021 WL 3504037, at *6 (3d Cir. Aug. 10, 2021). It is common sense that professional or trade publications often have a readership size that reflects the size of the profession, which may be small. As such, circulation is not so relevant when deciding what qualifies as a professional or trade publication. *Braga*, 2007 WL 9229758, at *6.

---

[11]    True, "other" in "other major media" could suggest that "professional or major trade publications" are a subset of "major media." But courts have applied the rule above even when the second, general phrase uses the word "other." *Ali*, 552 U.S. at 224–25; *Buluc*, 930 F.3d at 388–90; *see United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 293 (3d Cir. 2013) ("Some statutes use a general phrase not as a residual category intended to be a more general description of the preceding terms, but instead use each of the terms, including the general phrase, as independent and unrelated statutory categories.").

The AAO's opinion here relied heavily on the lack of circulation data (K.A.R. at 6), and in that regard, seemed at times to conflate "professional or major trade publications" and "other major media." Similarly, the underlying decision which the AAO affirmed relied on the lack of circulation data. (*Id.* at 71.) For the reasons given above, that deficiency should not preclude a finding that a publication is a "professional or major trade publication." As to that category, the reasoning of the AAO is less than clear. For example, the AAO explained that Ms. Krasniqi's contention that one publication, *NY Elite*, has "a wide-ranging appeal to all persons" was not sufficient because it "does not establish that NY Elite is a profession or major trade publication or other form of major media." (*Id.* at 6.)

This reasoning is insufficient to demonstrate that the AAO's finding has a basis in both the evidence and the regulations. "[I]n order to permit meaningful judicial review, an agency must disclose the basis of its action." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019) (quotation marks and citation omitted). Although I may uphold a decision "of less than ideal clarity," I must be able to reasonably discern "the agency's path." *Del. Riverkeeper II*, 869 F.3d at 161. Here, there is no clear path—just a conclusion. Besides the reference to circulation data (which is relevant only for "major media"), the AAO opinion does not contain a *rationale*. That deficiency is compounded when one considers case law holding that the key qualification for a professional or trade publication is not the publication's popularity but its "stature" in the relevant field. *Zizi*, 2021 WL 2826713, at *6; *see also Eguchi*, 2017 WL 2902667, at *4; *Muni v. INS*, 891 F. Supp. 440, 444 (N.D. Ill. 1995). The AAO's failure to consider the relevant factors renders its decision on this narrow point arbitrary and capricious. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("An agency action may be arbitrary and capricious if the agency . . . entirely failed to consider an important aspect of the problem . . . ." (quotation marks and citation omitted)).

21

It may be that Ms. Krasniqi's evidence, considered in light of the correct standard, would still be found inadequate, but that is not a determination for me to make in the first instance. *See id.* ("[W]e should not supply a reasoned basis for the agency's action that the agency itself has not given." (quotation marks and citation omitted)); *Sequretek*, 2021 WL 1660871, at *6 ("Remand is particularly appropriate [] because the essential problem was a failure to consider evidence or adequately explain rationales.").

Accordingly, I cannot uphold the AAO's finding on the published material criterion. Still, Ms. Krasniqi was required to demonstrate three factors; my inability to affirm on this factor establishes only that she might prevail on one. To warrant a remand, Ms. Krasniqi must show that the AAO erred on two other criteria as well.

### c. Original Contributions

The petitioner may present "[e]vidence of the alien's original . . . artistic . . . contributions of major significance in the field." 8 C.F.R. § 204.5(h)(3)(v). For this criterion, Ms. Krasniqi claimed that she founded Albanian Film Week, a film festival held in New York City showing films from Albanian producers. (K.A.R. at 8.) She contended that this festival was a unique contribution of major significance in cinematography because "no other Albanian artist in Kosovo, Albania or elsewhere has established a film festival abroad." (*Id.*)

The AAO, however, found that Ms. Krasniqi failed to "demonstrate what effect Albanian Film Week has had on the field." (*Id.* (italics omitted).) There was no evidence, the AAO explained, that the festival is widely viewed or regarded by members of the cinematography field. (*Id.*) Although Ms. Krasniqi provided "letters from other artists who commend her" for the festival, the AAO found that the letters lacked corroboration, were unspecific, and did not speak to the festival's impact on "cinematographic methods." (*Id.*)

I discern no error. Per the text of the regulation, the agency must assess a contribution's "major significance in the field." *Guida*, 2021 WL 568850, at

*9; *Viscincaia*, 4 F. Supp. 3d at 134; *Hristov*, 2011 WL 4711885, at *11; *Victorov*, 2020 WL 3213788, at *9. That phrase can be reasonably interpreted to mean that there must be some impact "on the field *as a whole*." *Viscincaia*, 4 F. Supp. 3d at 134 (emphasis added); *see also, e.g.*, *Hristov*, 2011 WL 4711885, at *11; *Skokos v. U.S. Dep't of Homeland Sec.*, No. 09-cv-193, 2010 WL 11538054, at *4 (D. Nev. Jan. 13, 2010). That is, the impact should extend beyond the petitioner's locality or a handful participants in the field. *Kinuthia v. Rosenberg*, Civ. No. 17-10255, 2018 WL 1243955, at *6 (D. Mass. Mar. 8, 2018); *Viscincaia*, 4 F. Supp. 3d at 134; *Skokos*, 2010 WL 11538054, at *4. To that end, "[c]onclusory statements" about the value of the contribution are insufficient, *Soni*, 2016 WL 4154137, at *5, and the AAO may reasonably ask for "corroborating" evidence, *Guida*, 2021 WL 568850, at *9; *Strategati*, 2019 WL 2330181, at *6.

Here, Ms. Krasniqi's limited evidence tended to show that she established a film festival, and that, according to some, the festival helped to grow the Albanian film industry. (K.A.R. at 85–86.) But if her "artistic" "field" is cinematography, as she claimed (*id.* at 85), then her evidence falls short. She has not shown the impact of the festival on the art of cinematography. For example, and as the AAO explained, there is no indication that the festival introduced new cinematographic methods or ideas. At most, she relies on letters stating that the festival has "jump start[ed] careers" of filmmakers who are of Albanian ethnicity or are exploring Albanian themes. (*Id.* at 8.) But she provided no corroborating evidence to that effect. While establishing a film festival is a laudable contribution, the AAO could reasonably ask how the festival has shaped cinematography and conclude that the mere existence of such a festival is insufficient when the regulation requires "major significance."

To be sure, the regulation's language is broad enough to allow the agency, if it were of such a mind, to move the goalposts. There is little in the language to stop the agency from holding petitioners to impossibly high standards. *Cf. Zizi*, 2021 WL 2826713, at *5 (finding that the AAO erred when

it concluded that a petitioner failed this criterion even though, among other things, he had thirteen patents, the federal government was interested in his inventions, and research agencies had recognized his approaches). Here, however, I cannot conclude that the AAO acted in that way, or that it erred when it applied a reasonable interpretation of the regulation. *See Viscincaia*, 4 F. Supp. 3d at 135 (upholding the AAO's application of a criterion because "neither the statute nor the regulation forecloses [the AAO's] particular interpretation").

### d. Role in Organizations

The petitioner may submit "[e]vidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation." 8 C.F.R. § 204.5(h)(3)(viii). Ms. Krasniqi argues that her work for the Albanian Film Festival so qualifies. (Pl. Opp. at 9.)[12] The AAO, however, found that she failed to provide evidence about "the nature of [her] role," such as her duties. (K.A.R. at 9.) The AAO also found that she failed to address or provide evidence establishing that the festival had a distinguished reputation. (*Id.*)[13]

I will affirm based on the AAO's first conclusion regarding evidence of her duties. Ms. Krasniqi's evidence regarding her role for the festival was vague. She relied mostly on the simple fact that she founded the festival. But the AAO

_____

[12]     Ms. Krasniqi did not challenge the AAO's finding on this criterion in her motion for summary judgment but did so in opposition to the Government's cross-motion for summary judgment. Although a plaintiff's failure to raise a claim in its motion for summary judgment can forfeit that claim, I will consider this criterion, given the cross-motion posture of this case. *Paul v. Colvin*, No. 12-CV-2046, 2013 WL 5797427, at *5–6 (S.D. Cal. Oct. 28, 2013) (considering arguments not raised in plaintiff's motion for summary judgment but raised in plaintiff's opposition to defendant's cross-motion for summary judgment); *cf. United States v. Boggi*, 74 F.3d 470, 478 (3d Cir. 1996) (considering, in a cross-appeal, arguments raised in a reply brief because the opposing party had a chance to respond)

[13]     Before the AAO, Ms. Krasniqi also relied on her role as president of a production company to satisfy this criterion, which the AAO rejected. (K.A.R. at 9.) She does not challenge the AAO's finding before this Court, so I do not address it.

was within reason to ask for specific duties and decline to rely on a job title to suffice as evidence for a "leading or critical role." *Noroozi*, 905 F. Supp. 2d at 544–45 (affirming the AAO's requirement of evidence of specific duties); *see Soni*, 2016 WL 4154137, at *5 (affirming AAO's decision declining to rely on vague evidence). The AAO thus did not err in finding that the evidence before it failed to meet a preponderance standard.

### e. Membership in Associations

The petitioner may submit "[d]ocumentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields." 8 C.F.R. § 204.5(h)(3)(ii). In her initial submission to the Service, Ms. Krasniqi submitted evidence of her membership in two organizations for Kosovar filmmakers. (K.A.R. at 77.) When the Service requested more evidence about these organizations, Ms. Krasniqi acknowledged that she "does not seem to meet this regulatory criteria [*sic*]." (*Id.* at 88.) The Service, in its initial decision, determined that she failed to present evidence on this criterion. (*Id.* at 70–71.)

When Ms. Krasniqi appealed to the AAO, her brief stated—in a sentence—that there is no requirement to show that the two organizations required outstanding achievements of their members. (*Id.* at 29.) The AAO noted that the "[t]he record support[ed]" the Service's finding on this criterion, and Ms. Krasniqi had not "challenged this finding on appeal." (K.A.R. at 5 n.3.) Now before this Court, she argues—again, in a sentence—that there is no "outstanding achievements" requirement, and that regardless, her evidence suffices. (Pl. Br. at 34–35.) The Government argues that she has forfeited any arguments for this criterion. (Gov't Opp. at 11.)

I agree. Generally, parties must "give the agency an opportunity to address an issue before seeking judicial review of that question," a principle known as "issue exhaustion." *Carr v. Saul*, 141 S. Ct. 1352, 1358 (2021); *see also Schreiber v. Cuccinelli*, 981 F.3d 766, 787 (10th Cir. 2020) (applying issue

exhaustion on review of petition denial before the Service and subsequent appeal), *pet. for cert. docketed*, No. 21-94 (U.S. July 23, 2021); *Sunshine Rehab Servs., Inc. v. U.S. Citizenship & Immigr. Servs.*, No. 09-13605, 2010 WL 3325442, at *11 (E.D. Mich. Aug. 20, 2010) (same). Unless statutes or regulations provide more specific rules, "courts decide whether to require issue exhaustion based on an analogy to the rule that appellate courts will not consider arguments not raised before trial courts." *Carr*, 141 S. Ct. at 1358 (quotation marks and citation omitted). Under that rule, an argument on appeal must "depend on the same legal rule or standard" and "depend on the same facts" as the argument before the trial court. *Spireas v. C.I.R.*, 886 F.3d 315, 321 (3d Cir. 2018) (citation omitted). As such, "[a] fleeting reference or vague allusion to an issue will not suffice to preserve it." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 262 (3d Cir. 2009); *see also Zizi*, 2021 WL 2826713, at *7 (declining to address criterion when argument was not adequately raised before the AAO); *Hristov*, 2011 WL 4711885, at *9 (same); *All Pro Cleaning Servs., Inc. v. Dep't of Labor*, No. Civ.A. H-05-250, 2005 WL 4045866, at *13 (S.D. Tex. Aug. 26, 2005) (same). Further, if a party affirmatively declines to press an argument below, that contention cannot form the basis of a challenge on appeal. *United States v. James*, 955 F.3d 336, 344–45 (3d Cir. 2020).

Ms. Krasniqi failed to preserve any argument regarding this criterion. First, her brief before the AAO mentioned this criterion in just a sentence, contained no substantive argument, and did not cite to supporting evidence. This fleeting mention before the AAO was thus inadequate to preserve an argument, so the AAO correctly found that she had not challenged the Service's finding. Second, she explicitly conceded before the Service that she did not meet this criterion (K.A.R. at 88), so the AAO's finding was also supported by the principle that waived or conceded issues are not properly before an appellate body. Finally, even if her arguments were administratively exhausted, she forfeited them in this Court. Her summary judgment briefs are

undeveloped on this criterion and do not make any attempt to engage with the evidence. Nor does she address the Government's exhaustion argument. Accordingly, the issue is not before me. *Yates Real Estate, Inc. v. Plainfield Zoning Bd. of Adjustment*, 404 F. Supp. 3d 889, 913 n.28 (D.N.J. 2019).[14]

### f. Comparable Evidence

The regulations provide that "[i]f the above standards [i.e., the (h)(3) criteria] do not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence to establish the beneficiary's eligibility." 8 C.F.R. § 204.5(h)(4). Ms. Krasniqi argues that her "Woman of the Year" Award from the Senate qualifies as "comparable evidence" of her "original contributions to the field of film." (Pl. Br. at 28–29.) The AAO, however, declined to consider the award because § 204.5(h)(4) is used for cases in which the (h)(3) criteria are ill-suited, if followed to the letter, to judging extraordinary ability for a particular occupation. (K.A.R. at 9.)[15] Ms. Krasniqi bore the burden to explain that the (h)(3) criteria were ill-suited to a filmmaker. (*Id.*) Yet she made no argument to that effect and instead argued that she satisfied the criteria. (*Id.*)

I agree with the AAO. To avail herself of § 204.5(h)(4), Ms. Krasniqi needed to first show that one of the (h)(3) criteria was not readily applicable to her field. *Zizi*, 2021 WL 2826713, at *8; *Skokos*, 2010 WL 11538054, at *5. She did not, and instead assumed that § 204.5(h)(4) is a supplemental, rather than alternative, provision. (K.A.R. at 37–38 (brief to the AAO).) That was incorrect. What is more, and as the AAO noted, her arguments that she met each (h)(3) criteria belied any argument that § 204.5(h)(4) should apply. Nor was there any reason to think, based on the record, that filmmaking is a field ill-suited to the

---

[14]   Regardless, her argument that there is no "outstanding achievements" requirement is plainly wrong in light of the text of the regulation.

[15]   For example, "an Olympic coach whose athlete wins an Olympic medal" could qualify as comparable evidence of "participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought" under 8 C.F.R. § 204.5(h)(3)(iv). USCIS Adjudicators Field Manual § 22.2[i].

(h)(3) criteria. Accordingly, the AAO's rejection of her "Woman of the Year" Award was reasonable.

* * *

To sum up, of the challenged findings, only one was arbitrary and capricious. Because a remand requires that at least three were arbitrary and capricious, Ms. Krasniqi cannot succeed on her APA claim regarding the denial of her petition for an extraordinary ability visa.

## B. Remaining Claims

Plaintiffs' other claims may be dealt with briefly.

First, any claim that the Service wrongly denied an adjustment of status for Ms. Krasniqi or Zogjani fails because such an adjustment requires a valid visa, which, as the prior section explained, the AAO lawfully denied. 8 U.S.C. § 1255(a).

Second, the Complaint's mandamus claim is duplicative of the APA claims, which have been rejected for the reasons stated above. *Mutasa*, --- F. Supp. 3d at ----, 2021 WL 1207482, at *3 n.4 (citing *Thompson v. U.S. Dep't of Labor*, 813 F.2d 48, 52 (3d Cir. 1987)).

Finally, the Complaint alleges that the Service's "failure to properly consider the actual evidence of record" violates Plaintiffs' right to procedural due process. (Compl. ¶ 39.) The Fifth Amendment provides that the federal government cannot "deprive[]" a person "of life, liberty, or property, without due process of law." U.S. Const. amend. V. This means that the federal government must provide "notice and an opportunity to be heard" before depriving someone of a recognized interest. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (citation omitted); *Dungan v. Slater*, 252 F.3d 670, 676 (3d Cir. 2001).

The due process claim fails for two reasons. First, there is no precedent recognizing a constitutionally protected interest in an extraordinary ability visa, and it is doubtful that such an interest exists. *See Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 445 (3d Cir. 2016) ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional

rights regarding his application." (citation omitted)); *Kinuthia*, 2018 WL 1243955, at *4 (dismissing a procedural due process claim based on an extraordinary ability visa denial); *Hamal v. U.S. Dep't of Homeland Sec.*, Civ. No. 19-2534, 2020 WL 2934954, at *4 n.4 (D.D.C. June 3, 2020) (doubting that an extraordinary ability visa can support a procedural due process claim). Second, and regardless, due process only requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation marks omitted). Plaintiffs "received notice of the possible denial of their petitions, were invited to present evidence and arguments, and received a written, reasoned explanation for the denial. That is sufficient to discharge the government's obligation to afford due process." *Giordano v. Garland*, Civ. No. 20-07875, 2021 WL 3012863, at *5 (D.N.J. July 14, 2021) (citations omitted).

## V.   CONCLUSION

For the reasons set forth above, Plaintiffs' motion for summary judgment is denied, and the Government's motion for summary judgment is granted.

A separate order will issue.

Dated: September 1, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**